Filed 1/25/22  P. v. Pardew CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JERRY PARDEW,<br><br>    Defendant and Appellant. | D079093<br><br><br>(Super. Ct. No. SCD220336) |

APPEAL from a judgment of the Superior Court of San Diego County, Peter L. Gallagher, Judge.  Affirmed.

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Charles C. Ragland and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Jerry Pardew appeals from the trial court's judgment following a bench trial recommitting him as a mentally disordered offender

("MDO") under Penal Code[1] sections 2970 and 2972.  During the proceedings, the trial court accepted Pardew's waiver of his right to a jury trial.  Pardew argues the judgment must be reversed because the trial court failed to sufficiently advise him of his right to a jury trial, and the record does not affirmatively demonstrate that his jury waiver was knowing and voluntary. We disagree, based on the totality of the circumstances.  We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2009, Pardew entered a guilty plea to one count of resisting an executive officer and two counts of threatening a state official or judge.  He also admitted one prison prior and two strike priors.  The court sentenced Pardew to 32 months in prison.

On December 2, 2011, Pardew was admitted to Atascadero State Hospital as a MDO pursuant to section 2962.  Since then, Pardew's commitment has been extended seven times.  Pardew submitted to the first commitment extension without a trial.  The second, third, fourth, and fifth extensions were by jury trial.  Pardew waived his right to a jury trial for the sixth extension proceeding, which resulted in a recommitment to a maximum date of December 2, 2020.

On August 4, 2020, the People petitioned to extend Pardew's commitment a seventh time, which is the subject of this appeal.  At a status conference on November 20, 2020, the court found good cause to continue the hearing past the December 2, 2020 maximum commitment date because Pardew was in quarantine due to the COVID-19 pandemic.  At the next status conference on December 4, 2020, the court again found good cause to continue the hearing due to Pardew being in quarantine.  Pardew appeared

---

[1]    All further statutory references are to the Penal Code.

2

by video for the next status conference on December 18, 2020, and the court explained the inability to produce Pardew in person due to the pandemic. After Pardew confirmed his desire for a jury trial, the court explained that jury trials were suspended due to the pandemic and set a status conference for January 15, 2021.

Pardew appeared for the January 15, 2021 hearing telephonically. The court summarized that Pardew had not waived his right to a jury trial, and the case had been continued because it was not possible to hold a jury trial during the pandemic. The court further explained that although it began to hold trials again in October 2020, after conducting three trials, one trial was stopped twice because two people became ill and needed to be tested to determine if they had COVID-19. The court explained that the situation had worsened since then, jurors were not responding to summonses, and it was essentially impossible to conduct jury trials. The court continued the status conference to February 19, 2021.

On February 19, 2021, the court informed all parties that the court had just resumed jury trials. The court scheduled a trial call for April 13, 2021, which was later continued to April 20, 2021. At the final status conference on April 19, 2021, the court rescheduled the jury trial for May 12, 2021.

On May 12, 2021, Pardew requested a bench trial. The colloquy proceeded as follows:
"THE COURT: Okay. And Mr. Pardew is here. Okay. The first order of busines is how we're going to conduct this trial. This would—Mr. Pardew, I need to personally advise you that you have a right to a jury trial, that you have a right to have a jury trial, have witnesses come in in [*sic*] front of 12 people, and make the decision on what is before the court today. Do you

3

waive that right and do you personally agree to a bench trial whereby I will make the decision?

"THE DEFENDANT: Judge, bench trial.

"THE COURT: Bench trial?

"THE DEFENDANT: Yes, sir.

"THE COURT: Okay. And you made this decision by thinking about it and you discussed it with your attorney?

"THE DEFENDANT: Yeah. I think that you're right, too, that starting and stopping the proceedings is not—if you look at the proceedings, it's a misdemeanor. However, it's played once a year anyway.

"THE COURT: Okay.

"THE DEFENDANT: But they could easily lose track of what is going on, you know? So that's one of my weights, heavy weight, for a bench trial.

"THE COURT: Okay. So you agree to a bench trial?

"THE DEFENDANT: Yes, sir.

"THE COURT: Okay. Note that for the record. All right. I've got a couple of questions. I'm looking at the in limine motions . . ."

There was no further discussion of jury waiver throughout the remainder of the trial proceedings.

On May 20, 2021, after a six-day bench trial, the court sustained the petition and recommitted Pardew for another year, for a maximum commitment date of December 2, 2021.

## DISCUSSION

Pardew contends the trial court failed to properly advise him of his right to a jury trial before accepting his personal waiver. Specifically, Pardew argues that the court's advisement did not include descriptions of certain mechanics of a jury trial, as recommended by the California Supreme

4

Court in *People v. Sivongxxay* (2017) 3 Cal.5th 151 (*Sivongxxay*). Pardew further argues the record does not affirmatively demonstrate that his waiver was knowing and voluntary. He urges the record shows he was confused in his thinking. We disagree and conclude that based on the totality of the circumstances, Pardew entered a knowing and voluntary jury trial waiver.

In *People v. Blackburn* (2015) 61 Cal.4th 1113 (*Blackburn*), our Supreme Court ruled that prior to holding a bench trial to extend an MDO defendant's commitment, the trial court must advise the defendant personally of his or her right to a jury trial and must obtain a personal waiver of that right unless the court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver. (§ 2972, subd. (a); *Blackburn*, *supra*, 61 Cal.4th at p. 1116.) However, "a trial court's acceptance of a defendant's personal waiver without an express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary." (*Blackburn*, at p. 1136.) *Blackburn*, however, "did not speak to the standard for evaluating whether a waiver is voluntary and intelligent." (*People v. Farwell* (2018) 5 Cal.5th 295, 305.)

A defendant's jury waiver must be "knowing and intelligent, that is, 'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,' as well as voluntary 'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" (*Sivongxxay*, *supra*, 3 Cal.5th at p. 166, quoting *People v. Collins* (2001) 26 Cal.4th 297, 305, internal quotations omitted). Pardew does not contend that he was intimidated, coerced, or deceived into waiving his right to a jury trial. The issue here is whether Pardew's waiver was knowing and intelligent.

5

The California Supreme Court in *Sivongxxay* offered "general guidance" to help ensure a jury trial waiver is knowing and intelligent. (*Sivongxxay, supra*, 3 Cal.5th at p. 169.) The court recommended that trial courts advise defendants of the basic mechanics of a jury trial including, but not limited to, that "(1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Ibid.*) The court in *Sivongxxay* also recommended that the trial judge take steps to ensure the defendant comprehends what the jury right entails, such as asking whether the defendant had an adequate opportunity to discuss the decision with counsel, asking whether counsel explained the differences between a jury and bench trial to the defendant, or asking the defendant directly whether he or she understands the right being waived. (*Id.* at p. 170.) After providing its guidance, the court emphasized that such guidance is "advisory" and "is not intended to limit trial courts to a narrow or rigid colloquy." (*Ibid.*) The test of a valid waiver turns on whether the record affirmatively shows that the waiver is knowing and intelligent under the totality of the circumstances. (*Id.* at p. 167.)

"Reviewing courts must continue to consider all relevant circumstances in determining whether a jury trial waiver was knowing, intelligent, and voluntary." (*Sivongxxay, supra*, 3 Cal.5th at p. 170.) Additionally, a reviewing court will "independently examine the entire record to determine whether this standard has been met." (*People v. Daniels* (2017) 3 Cal.5th 961, 1018 (lead opn. of Cuellar, J.).)

While Pardew argues that the trial court's advisement was insufficient because it did not explain all the mechanics of a jury trial that were

suggested in *Sivongxxay*, we decline to take such a rigid view of the advisement requirement.  (See *Sivongxxay*, *supra*, 3 Cal.5th at p. 170 [emphasizing that the guidance provided therein is "advisory" and "is not intended to limit trial courts to a narrow or rigid colloquy"].)  The Supreme Court and Courts of Appeal have consistently concluded that a trial court's failure to provide a specific advisement does not render the jury waiver invalid.  (See *People v. Jones* (2018) 26 Cal.App.5th 420, 430 [emphasizing this point and canvasing case law].)  "The test of a valid waiver ultimately turns, not on whether specific warnings or advisements were given, but whether 'the record affirmatively shows that [the waiver] is voluntary and intelligent under the totality of the circumstances.'" (*People v. Daniels*, *supra*, 3 Cal.5th at p. 1018.)

We also disagree with Pardew's contention that the trial court's failure to ask Pardew's counsel to join in the waiver rendered the waiver invalid.  Pardew has not provided any legal authority, and we have found none independently, indicating that a trial court must ask counsel to join in the waiver.  Further, while *Sivongxxay* suggested inquiring about counsel's discussions with the defendant as a way to ensure the defendant comprehends the jury trial right, there is no requirement that a trial court ask counsel whether he or she believes the defendant understands the waiver, or whether he or she had enough time to discuss the decision with the defendant.  (See *Sivongxxay*, *supra*, 3 Cal.5th at p. 167 [concluding the defendant entered a knowing and intelligent jury waiver even though "[t]he trial court also did not ask any questions confirming that defendant understood how a jury works, or that defendant had discussed the jury waiver with his counsel"].)  "Ultimately, a court must consider the defendant's individual circumstances and exercise judgment in deciding how

7

best to ensure that a particular defendant who purports to waive a jury trial does so knowingly and intelligently." (*Id.* at p. 170.)

Courts have considered an individual defendant's experience with the criminal justice system when assessing whether a defendant knowingly and intelligently waived the jury right. (*People v. Jones, supra,* 26 Cal.App.5th at p. 437 [considering that the defendant had no prior experience with the criminal system]; *Sivongxxay, supra,* 3 Cal.5th at p. 167 [considering that the defendant did have experience with the criminal justice system]; *People v. Roles* (2020) 44 Cal.App.5th 935, 951 [same].) Courts also "exercise prudence in determining what types of prior criminal experience would be most relevant to the waiver at issue." (*People v. Daniels, supra,* 3 Cal.5th at p. 1001.) Here, the record shows that Pardew had already been through four jury trials. Moreover, those jury trials were MDO recommitment proceedings. (Cf. *People v. Blancett* (2017) 15 Cal.App.5th 1200, 1206–1207 [concluding defendant's waiver was not knowing and intelligent, considering it was defendant's initial MDO commitment with no indication in the record that the defendant was familiar with MDO proceedings or that he was aware he was entitled to a jury trial].) Pardew's counsel also stated that Pardew has always been very involved in his trials. Pardew's prior experience with jury trials in MDO commitment proceedings shows that Pardew understood his right to the same during his seventh MDO recommitment proceeding.

The colloquy itself also confirms Pardew's understanding of what a jury trial entails. Namely, Pardew expressed his concern that a jury "could easily lose track of what is going on" with a jury trial "starting and stopping." Pardew argues that this consideration was irrelevant and shows that he was confused, claiming there would not have been any "starting or stopping" in a jury trial because the bench trial occurred over six consecutive days.

8

However, waiving his right to a jury trial eliminated the risk of a juror becoming ill, which would have put the trial on hold until the juror could be tested for COVID-19. The trial court had explicitly advised the parties that this situation occurred during a prior trial due to the ongoing COVID-19 pandemic. Pardew's concern with a jury trial "starting and stopping" therefore demonstrated his understanding of the surrounding circumstances when making his waiver decision.

Additionally, during the jury waiver colloquy, Pardew acknowledged that there would be a proceeding "once a year anyway." The maximum date for Pardew's previous commitment was December 2, 2020. Pardew's trial on a recommitment from December 2, 2020 to December 2, 2021 (the commitment period at issue), however, was not scheduled until May 2021 because of delays due to the inability to hold jury trials during the pandemic. Thus, five months of the commitment period at issue had already passed. By the time Pardew waived his right to a jury trial, Pardew's counsel had discussed with Pardew that the report for the *next* commitment period of December 2, 2021 to December 2, 2022, was already completed. Thus, Pardew's comment that there would be a proceeding "once a year anyway," shows his understanding of MDO commitment proceedings.[2] His comment also reveals that he made an informed decision to have an uninterrupted bench trial in May 2021 to seek to end his commitment immediately, and that he understood he would have another opportunity to contest his commitment in December 2021 if the bench trial resulted in an extension.

---

[2] Pardew's comment that the proceeding was a misdemeanor does not show any confusion of his right to a jury trial. Rather, it reflects Pardew's belief that he was originally in court on misdemeanors, as he testified during the trial.

In sum, considering the totality of the circumstances, including Pardew's individual circumstances, the record affirmatively demonstrates that his jury waiver was knowing and intelligent.

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

DATO, J.

10